# United States District Court

**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| ANALI VIDAÑA | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:24-CV-2661-S |
| | § | |
| DALLAS INDEPENDENT SCHOOL | § | |
| DISTRICT | § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Dallas Independent School District's Motion for Summary Judgment ("Motion") [ECF No. 39]. The Court has reviewed the Motion, Defendant's Brief in Support of the Motion ("Defendant's Brief") [ECF No. 40], Plaintiff Anali Vidaña's Response to the Motion ("Response") [ECF No. 47], Plaintiff's Brief in Support of the Response ("Plaintiff's Brief") [ECF No. 49], Defendant's Reply Brief in Support of the Motion [ECF No. 54], the summary judgment evidence, and the applicable law. For the following reasons, the Court **GRANTS** the Motion.

## I. BACKGROUND

Plaintiff Anali Vidaña is an elementary school teacher employed by Defendant Dallas Independent School District. App. of Evid. in Supp. of Mot. ("Defendant's Appendix") [ECF No. 41] Ex. A [ECF No. 41-1] 3 ¶¶ 6-7; *id.* at 16 ¶ 46; Pl.'s Second Am. Compl. ("Amended Complaint") [ECF No. 25] ¶ 3.1. Plaintiff identifies herself as a Hispanic female. Am. Compl. ¶ 1.1. Beginning in 2018, Plaintiff taught bilingual[1] kindergarten classes at Mockingbird Elementary School ("Mockingbird"), a school in within Dallas Independent School District. *See* App. in Supp. of Pl.'s Br. ("Plaintiff's Appendix") [ECF No. 48] Ex. A at 3 ¶ 5. Plaintiff's son,

---

[1] The parties alternatively use "bilingual" and "dual language." It is unclear to the Court whether there is a material difference between the two terms. In this Memorandum Opinion and Order, the Court uses the term that appears in the briefing and/or evidence supporting a given fact.

R.M., is a student at Mockingbird. *Id.* at 3 ¶ 7. R.M. "is an emergent bilingual . . . student" and receives special education services. Am. Compl. ¶ 3.2. Margaret Huff ("Principal Huff") became the principal of Mockingbird in 2020. Def.'s App., Ex. E [ECF No. 41-12] 969 ¶ 5.

### A. Plaintiff's Education-Related Concerns

Beginning in 2020, Plaintiff served as the Chair of the Language Proficiency Assessment Committee ("LPAC") in addition to her teaching role. Pl.'s App., Ex. A, at 4 ¶ 10. In this position, Plaintiff grew concerned about certain LPAC practices, including that an LPAC parent representative's signature may have been falsified on paperwork. *Id.* at 4 ¶¶ 10-11. In or around November 2022, Plaintiff raised these concerns with Principal Huff "in [Plaintiff's] capacity as LPAC Chair." *Id.* at 4 ¶ 11. Plaintiff later resigned from her position as LPAC Chair before the 2023-2024 school year. Def.'s App., Ex. C [ECF No. 41-8] 697 ¶ 11.

In January 2024, Plaintiff expressed "special education-related concerns" to the LPAC, Principal Huff, and administrators regarding R.M.'s performance on testing. Pl.'s App., Ex. A, at 4 ¶¶ 13-14. Principal Huff scheduled a meeting with Plaintiff to discuss the issues Plaintiff raised. *See* Def.'s Sealed App. Ex. 4 [ECF No. 44-4] 994. Plaintiff emailed Principal Huff and others during the workday about the meeting. *Id.* at 992-93; Def.'s App., Ex. E, at 972 ¶ 14; Def.'s App., Ex. A-6 [ECF No. 41-2] 60 ¶¶ 1-2. The meeting went forward as scheduled, and on February 2, 2024, Principal Huff and others conducted a follow-up meeting with Plaintiff. Def.'s App., Ex. E, at 971-72 ¶¶ 11, 14.

### B. Summary of Conference

At the conclusion of the follow-up meeting, Principal Huff issued a Summary of Conference to Plaintiff regarding Plaintiff sending personal emails during the workday. Pl.'s App., Ex. A, at 5 ¶ 16; Def.'s App., Ex. A-6, at 64. The Summary of Conference was not placed in

2

Plaintiff's personnel file maintained by Defendant. Def.'s App., Ex. A, at 4 ¶ 14. Plaintiff filed a grievance regarding the Summary of Conference. Pl.'s App., Ex. A, at 6 ¶ 19; Pl.'s App., Ex. C, at 29-34. Among other things, Plaintiff noted that other teachers used a messaging platform to send messages during the workday that did not pertain to work-related issues. Pl.'s App., Ex. C, at 32. As a result of Plaintiff's grievance, Principal Huff rescinded the Summary of Conference. Pl.'s App., Ex. A, at 6 ¶ 19; Def.'s App., Ex. A, at 5 ¶ 15.

### C. Meeting with Dr. Katherine Eska

On February 5, 2024, Plaintiff spoke with Principal Huff's supervisor, Dr. Katherine Eska, about her concerns regarding her son, issues with the LPAC, and complaints about Principal Huff's leadership. Def.'s App., Ex. C, at 697-98 ¶¶ 9-12, 15. Plaintiff gave Dr. Eska a document listing the problems she identified. *Id.* at 697 ¶ 10; Def.'s App., Ex. C-2 [ECF No. 41-9] 718-22. Dr. Eska met with Plaintiff and Principal Huff a few days later to discuss their working relationship. Def.'s App., Ex. C, at 699 ¶ 17. Plaintiff read aloud from a letter listing complaints about how Principal Huff treated other employees. *Id.*; *see also* Def.'s App., Ex. C-4 [ECF No. 41-10] 760-66. The parties dispute whether Principal Huff made a comment about "cultural differences" at the meeting. *See* Pl.'s App., Ex. A, at 13 ¶ 48 (Declaration of Plaintiff averring that Principal Huff told Plaintiff they could not work together due to "cultural differences"); Def.'s App., Ex. C, at 700 ¶¶ 18-19 (Declaration of Dr. Eska denying that Principal Huff made a comment about "cultural differences").

### D. Amplify Coaching

During the 2022-2023 school year, Mockingbird began implementing a new reading curriculum called Amplify. Def.'s App., Ex. B [ECF No. 41-7] 581 ¶ 5; Def.'s App., Ex. C, at 696 ¶ 4. In 2023, Sydney Celestin was hired as a demonstration teacher to coach other teachers on

3

topics such as "classroom culture, management, and organization." Def.'s App., Ex. B, at 580-81 ¶¶ 2-4. Celestin observed Mockingbird classrooms to identify teachers that an Amplify coach should visit. *Id.* at 581 ¶ 7. Later, Celestin added Amplify coaching to her coaching load. *Id.* at 583 ¶ 11. She planned to coach two teachers per grade level. *Id.* Celestin selected Plaintiff, among others, to receive Amplify coaching. *Id.* at 583 ¶¶ 12-13. According to Celestin, she chose Plaintiff because Plaintiff was not implementing Amplify on two of Celestin's three visits to Plaintiff's classroom. *Id.* at 582-84 ¶¶ 9, 12-13. On February 2, 2024, Celestin told Plaintiff that she would be coaching Plaintiff on Amplify. Pl.'s App., Ex. A, at 6 ¶ 21; Def.'s App., Ex. B-3 [ECF No. 41-8] 679.

After two meetings, Plaintiff declined further coaching from Celestin. Def.'s App., Ex. B, at 588 ¶ 29. Principal Huff and Assistant Principal Deranda Meyers ("Assistant Principal Meyers") met with Plaintiff to discuss her concerns with the coaching. *Id.* at 589 ¶ 31. At the meeting, they agreed to certain accommodations for Plaintiff. Def.'s App., Ex. B-11 [ECF No. 41-8] 688. Plaintiff continued to express concerns regarding her coaching, and Celestin ultimately asked to stop coaching Plaintiff. Def.'s App., Ex. B-16 [ECF No. 41-8] 694. Celestin asked to instead coach the other dual language kindergarten teacher at Mockingbird. *Id.*; *see also* Def.'s App., Ex. B, at 583 ¶ 12.

### *E. Letter of Concern and Hotline Report*

On February 26, 2024, a teacher reported that Plaintiff was asking to see her Amplify coaching feedback. Def.'s App., Ex. A-8 [ECF No. 41-3] 134; Def.'s App., Ex. C [ECF No. 41-9] 701 ¶ 20. The next day, Principal Huff issued Plaintiff a Letter of Concern regarding professional communication with colleagues. Pl.'s App., Ex. A, at 7 ¶ 22; Pl.'s App., Ex. E, at 98. The Letter of Concern was not placed in Plaintiff's personnel file maintained by Defendant. Def.'s App.,

Ex. A, at 5 ¶ 17. Plaintiff filed a grievance. Pl.'s App., Ex. A, at 7 ¶ 24; Def.'s App., Ex. A-8, at 128-32. Defendant rescinded the Letter of Concern. Def.'s App., Ex. A, at 5-6 ¶ 18.

Around the same time that she issued the Letter of Concern, Principal Huff made a "Hotline report" about Plaintiff. Pl.'s App., Ex. A, at 7 ¶ 23; Def.'s App., Ex. C, at 702 ¶ 21 (describing a complaint Principal Huff filed with Defendant's Professional Standards Office). Principal Huff accused Plaintiff of behaving aggressively toward her. Pl.'s App., Ex. A, at 7 ¶ 23; Def.'s App., Ex. C, at 702 ¶ 21. According to Plaintiff, a white kindergarten teacher, Erin Littlefield, also had combative meetings with, and reported concerns to, Principal Huff but did not suffer any consequences. Pl.'s App., Ex. A, at 15 ¶¶ 55-56.

### F. Plaintiff's Reassignment to Second Grade

In Spring 2024, Dr. Eska and Principal Huff learned that they would need to move teachers around because Mockingbird was likely to lose sections of bilingual classes for the following school year. Def.'s App., Ex. C, at 703-04 ¶¶ 26-27. Principal Huff proposed moving Plaintiff to a second-grade, self-contained, dual language classroom. Def.'s App., Ex. C, at 704-05 ¶¶ 27-28. On March 26, 2024, Principal Huff met with Plaintiff to discuss her reassignment to second grade for the 2024-2025 school year. Pl.'s App., Ex. A, at 8 ¶ 25. Another teacher, Chantal Perera Peralta, moved into Plaintiff's former classroom. *Id.*; *see also* Def.'s App., Ex. C-17 [ECF No. 41-11] 806. A third teacher, Yesenia Moreno, was reassigned to teach kindergarten. Def.'s App., Ex. E, at 981 ¶ 38. Plaintiff expressed concern that her reassignment would impact her bilingual stipend, but it did not. Def.'s App., Ex. A, at 16 ¶ 45; Def.'s App., Ex. G-4 [ECF No. 41-14] 1158-59.

### G. Complaints to Defendant's Leadership and the League of United Latin American Citizens

On April 1, 2024, Plaintiff's husband sent an email to Defendant's Superintendent and a Board Trustee regarding LPAC, special education, and deaf education issues. Pl.'s App., Ex. A,

5

at 8 ¶ 27; Def.'s App., Ex. C-14 [ECF No. 41-10] 795-97. Two days later, Associate Superintendent Dr. Laura Garza met with Plaintiff and her husband. Pl.'s App., Ex. A, at 8 ¶ 27; Def.'s App., Ex. C-15 [ECF No. 41-10] 798. After the meeting, Dr. Garza asked the Professional Standards Office to investigate the LPAC fraud allegations. Def.'s App., Ex. C, at 707 ¶ 37.

On April 4, 2024, Plaintiff lodged a complaint with the League of United Latin American Citizens ("LULAC")[2] regarding LPAC and special education issues impacting her son. Def.'s App., Ex. D-9 [ECF No. 41-11] 876-78. She also claimed that she had been retaliated against for advocating for her son. *Id.* at 877. A LULAC representative spoke with Plaintiff, Dr. Garza, and Principal Huff. Def.'s App., Ex. D-13 [ECF No. 41-12] 934. The representative told Plaintiff, among other things, that the grade level reassignment was not a retaliatory act. *Id.*

On July 30, 2024, Plaintiff emailed LULAC regarding her reassignment to second grade. Def.'s App., Ex. C-22 [ECF No. 41-11] 819. She claimed that two other Hispanic female teachers were also removed from their positions "to place teachers that have no experience in their roles." *Id.*

### *H. 2024 Summative Review*

In May 2024, Assistant Principal Meyers provided Plaintiff with her annual Summative Review for the preceding school year. Def.'s App., Ex. E, at 984-85 ¶¶ 49-50. Plaintiff received the highest score, Exemplary, in most domains but received only a Proficient score in three domains. Pl.'s App., Ex. A, at 9 ¶ 32; Def.'s Sealed App., Ex. 4, at 985 ¶ 52. Plaintiff filed a grievance, Def.'s App., Ex. A-10 [ECF No. 41-3] 155-60, which was denied both initially and on

---

[2] Neither party explains LULAC's role in education- or employment-related issues.

6

appeal,[3] Pl.'s App., Ex. A, at 9-10, 15-16 ¶¶ 31, 35, 57; Pl.'s App., Ex. K, at 118-19; Def.'s Sealed App., Ex. 3, at 476-77; Def.'s App., Ex. A-20 [ECF No. 41-6] 487.

### I. Complaints to Texas State Agencies

Also in May 2024, Plaintiff submitted complaints to the Texas State Auditor's Office and Texas Education Agency. *See, e.g.*, Pl.'s App., Ex. A, at 8 ¶ 28; Pl.'s App., Ex. F, at 100-01; Pl.'s App., Ex. G, at 103-04. Plaintiff's complaints to the Texas State Auditor's Office alleged, among other things, that: (1) Defendant was not placing children in the correct programs despite receiving funding to do so; and (2) the signature of an LPAC parent representative was forged on paperwork related to R.M. Pl.'s App., Ex. G, at 104; Def.'s App., Ex. H-6 [ECF No. 41-16] 1373. Plaintiff's Texas Education Agency complaint also involved the forged signature allegation. Def.'s App., Ex. C, at 708 ¶ 38.

### J. Mediation and Transfer Proposal

On June 10, 2024, Plaintiff met with Dr. Garza, Dr. Eska, a mediator, and a LULAC advocate regarding her reassignment to second grade. *Id.* at 708-09 ¶ 42; Pl.'s App., Ex. A, at 11 ¶ 41. Plaintiff claims that she was pressured to leave Mockingbird during this meeting. Pl.'s App., Ex. A, at 11 ¶ 41; *see also* Def.'s App., Ex. C, at 709 ¶ 43 (Declaration of Dr. Eska, in which she states that Garza "offered [Plaintiff] an opportunity to transfer to another campus because of the break down in trust between [Plaintiff] and Mockingbird administration"). Shortly after the mediation, Principal Huff resigned as Mockingbird's principal. Def.'s App., Ex. C, at 710 ¶ 46.

### K. Plaintiff's Charge of Discrimination

On June 24, 2024, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"). Pl.'s App., Ex. L, at 121-32. Plaintiff checked

---

[3] On appeal, Dr. Eska granted the grievance solely as to Plaintiff's request not to suffer retaliation for filing the grievance. Def.'s App., Ex. A, at 7 ¶ 22; Def.'s Sealed App., Ex. 3 [ECF No. 44-3] 476-77.

7

boxes for race and sex discrimination, retaliation, and hostile work environment. *Id.* at 121. Plaintiff challenged a variety of actions taken against her, including: (1) her selection to receive Amplify coaching; (2) the Summary of Conference; (3) the Letter of Concern; (4) the "Hotline report"; (5) the reassignment to second grade; and (6) the Summative Review score. *Id.* at 126-32. She states that she received a Notice of Right to Sue one month later. Am. Compl. ¶¶ 3.55, 4.3.

### *L. Plaintiff's Reassignment to Barbara Jordan Elementary School*

After the 2024-2025 school year started, Defendant conducted a process called "Fall Leveling" to reallocate teaching positions among schools based on actual enrollment for the year. Def.'s App., Ex. A, at 9-10 ¶ 30. As a result of this process, Mockingbird lost two English as a Second Language teaching allocations and one bilingual teaching allocation. Def.'s App., Ex. C, at 713 ¶ 55. Mockingbird's new principal, William Smyth ("Principal Smyth"), applied the applicable district policy to identify three employees, including Plaintiff, as employees subject to reassignment. *Id.* A Campus Staffing Supervisor later informed Principal Smyth that Plaintiff had been "identified as excess" and "assigned to another campus." Pl.'s App., Ex. D, at 94-95. Accordingly, Plaintiff was reassigned to Barbara Jordan Elementary School ("Jordan"). Pl.'s App., Ex. A, at 12 ¶ 44; Def.'s App., Ex. A-21 [ECF No. 41-6] 493. Plaintiff started at Jordan in September 2024 as a second-grade bilingual teacher. Def.'s App., Ex. A, at 11 ¶ 33; Def.'s App., Ex. A-30 [ECF No. 41-7] 549. Plaintiff receives a $9,000 stipend for teaching at Jordan. Def.'s App., Ex. A, at 15 ¶ 44; Pl.'s App., Ex. A, at 14 ¶ 53. However, Plaintiff's commute to Jordan is longer than her commute to Mockingbird, and her children have remained at Mockingbird. Pl.'s App., Ex. A, at 14 ¶¶ 51-52. Plaintiff challenged her transfer to Jordan, and Defendant offered to transfer her back to Mockingbird in exchange for withdrawal of all grievances, informal complaints, pending charges of discrimination, and pending litigation. Pl.'s App., Ex. I, at 110.

8

### *M. The Instant Lawsuit*

On October 23, 2024, Plaintiff filed this lawsuit. *See* Pl.'s Original Compl. [ECF No. 1]. Defendant moved to dismiss the case, and the Court granted in part and denied in part the motion and granted Plaintiff leave to amend. Order [ECF No. 22]. Thereafter, Plaintiff filed the Amended Complaint, in which she asserts claims for sex and "race/ethnicity" discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and a claim for violations of the First Amendment pursuant to 42 U.S.C. § 1983. Am. Compl. ¶¶ 4.1-4.14.

## II. LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, he "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) showing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a

9

reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[C]onclusory statements, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). The Court resolves factual controversies in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. ANALYSIS

Defendant moves for summary judgment on Plaintiff's Title VII discrimination and retaliation claims based on her reassignment to Jordan on the ground that Plaintiff did not administratively exhaust such claims. Mot. 5. Then, Defendant moves for summary judgment on all of Plaintiff's claims, arguing that Plaintiff has not established the required elements of each claim. *Id.* at 5-6. Finally, Defendant challenges whether Plaintiff can prove that she suffered damages. *Id.* at 4. The Court turns first to the exhaustion argument before considering the merits of Plaintiff's claims. Because the Court concludes that Defendant is entitled to summary judgment, the Court does not reach the damages issue.

### *A. Exhaustion*

Defendant first argues that Plaintiff did not exhaust her discrimination and retaliation claims based on her reassignment to Jordan. Def.'s Br. 22-23. Before seeking relief in federal court, a plaintiff bringing a claim under Title VII must exhaust her administrative remedies. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). To exhaust her remedies, "a plaintiff must file a timely charge with the EEOC and then receive a notice of the right to sue." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021) (citing *Taylor*, 296 F.3d at 379).

Defendant sets forth two arguments in support of its contention that Plaintiff failed to exhaust administrative remedies. First, Defendant states that Plaintiff's reassignment to Jordan occurred after Plaintiff received a notice of right to sue, meaning the EEOC "was never made aware of or even had the opportunity to evaluate" these allegations. Def.'s Br. 22. Second, Defendant contends that the reassignment was a discrete act and that Plaintiff was required to file a supplemental or new charge of discrimination covering the reassignment. *Id.* at 22-23.

Plaintiff filed her Charge on June 24, 2024. Pl.'s App., Ex. L, at 121. Typically, the EEOC has 180 days to investigate a charge of discrimination. *Shah v. Plano Indep. Sch. Dist.*, No. 4:17-CV-00685, 2018 WL 5795456, at *3 (E.D. Tex. Nov. 5, 2018). At the conclusion of that period, the EEOC may issue a right-to-sue notice. *Id.* But the complainant may request early issuance of the notice, which will be granted if the EEOC determines that it "will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge." 29 C.F.R. § 1601.28(a)(2). Issuance of a right-to-sue notice terminates further EEOC processing of the complaint.[4] *Id.* § 1601.28(a)(3).

In this case, Plaintiff requested a right-to-sue notice in July 2024. Def.'s App., Ex. H-5, at 1257-62. The EEOC transmitted Plaintiff's request to the Department of Justice on July 23, 2024, noting that it could not process Plaintiff's Charge within 180 days of its filing. Def.'s App., Ex. H-5, at 1242-43. Plaintiff was reassigned to Jordan approximately two months later, in September 2024. Def.'s App., Ex. A-21, at 493. Although this evidence strongly suggests that the EEOC terminated its investigation two months before Plaintiff's reassignment to Jordan, neither party filed the right-to-sue notice with its summary judgment evidence. As such, the Court cannot

---

[4] If the respondent is a government, governmental agency, or political subdivision, the Attorney General instead issues the right-to-sue notice. 29 C.F.R. § 1601.28(d)(2). Government or political subdivisions include public education institutions, like Defendant. Def.'s App., Ex. H-5 [ECF No. 41-15] 1243.

11

conclusively determine that the reassignment occurred "after [Plaintiff] had requested and received a Notice of Right to Sue." Def.'s Br. 22.

Because it is unclear whether the EEOC's investigation remained open in September 2024, the Court must determine whether Plaintiff's discrimination and retaliation claims based on her reassignment are within "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (citation and internal quotation marks omitted). Plaintiff's Charge asserts, among other things, claims for discrimination based on race and sex and retaliation. Pl.'s App., Ex. L, at 121. Plaintiff checked the box for "continuing action" and set forth an extensive list of examples of alleged discrimination and retaliation. *Id.* The list did not include the reassignment to Jordan, which had not happened at the time Plaintiff submitted the Charge. *See id.*

The Court determines that Plaintiff's reassignment-based claims are unexhausted for two reasons. First, for discrete acts of discrimination, "a claimant must file a supplemental charge or amend the original EEOC charge." *Phillips v. Caris Life Scis., Inc.*, 715 F. App'x 365, 369 (5th Cir. 2017) (citation omitted). Plaintiff's reassignment is a discrete act. *Tillman v. S. Wood Preserving of Hattiesburg, Inc.*, 377 F. App'x 346, 349 (5th Cir. 2010) (noting that the United States Supreme Court has defined "discrete acts" as "easily identifiable incidents"). And Plaintiff did not file a supplemental or amended charge discussing her reassignment; therefore, she did not exhaust claims based on that act. *See Simmons-Myers v. Caesars Ent. Corp.*, 515 F. App'x 269, 273 (5th Cir. 2013) ("Although [the plaintiff] made allegations of gender discrimination for acts prior to her termination in her EEOC charge, . . . [h]er termination was a separate employment event for which [the plaintiff] was required to file a supplemental claim, or at the very least, amend her original EEOC charge." (citations omitted)).

12

Second, Plaintiff's claims based on her reassignment do not grow out of the Charge. In conducting this "fact-intensive analysis," the Court "look[s] slightly beyond [the Charge's] four corners, to its substance rather than its label." *Pacheco*, 448 F.3d at 789 (citation omitted). Here, Plaintiff's Charge challenges "discrimination based on race and sex from [Mockingbird's] Principal, [Huff], . . . in the ways listed below." Pl.'s App., Ex. L, at 121-32. Plaintiff then sets forth a variety of challenged acts. *See id.* Plaintiff's examples end with the June 2024 meeting at which she was given the option to transfer, which "was the final discriminatory action taken against [Plaintiff] before [Principal] Huff announced that she would not be returning . . . in the fall." *Id.* at 132. Although Plaintiff indicated that she did "not believe that the discrimination [would] end with [Principal Huff's] departure," *id.*, the Court concludes that the reassignment, effectuated by a new principal and occurring approximately two months after Plaintiff requested a notice of right to sue, would not have been within the scope of a reasonable EEOC investigation growing out of the Charge. *See Smith v. City of Dallas*, No. 3:19-CV-2892-K-BK, 2022 WL 3328906, at *3 (N.D. Tex. July 20, 2022) (dismissing as unexhausted claims based on a suspension because at the time the plaintiff filed his charge, the suspension "had not yet occurred and involved an individual unnamed in his . . . EEOC charge"), *report and recommendation adopted by* 2022 WL 3290572 (N.D. Tex. Aug. 11, 2022).

Plaintiff counters, however, that her retaliation claim should be deemed exhausted pursuant to *Gupta v. East Texas State University*, 654 F.2d 411 (5th Cir. Unit A Aug. 1981). Pl.'s Br. 13. In *Gupta*, the Fifth Circuit held that "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge." 654 F.2d at 414. But the Fifth Circuit "has repeatedly held that the *Gupta* exception only applies when the new claim is one of retaliation; *Gupta* does not apply to cases in which both retaliation and discrimination

13

claims are alleged." *Phillips*, 715 F. App'x at 370 (citation omitted). Here, Plaintiff asserts both discrimination and retaliation claims premised on her reassignment to Jordan. As such, the *Gupta* exception does not apply.

### B. Merits

Even if Plaintiff had exhausted all of her claims, however, they fail on their merits. The Court addresses Plaintiff's Title VII claims first before considering her First Amendment claim.

#### i. Title VII Discrimination

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can bring claims for discrimination based on multiple theories. In this case, Plaintiff brings claims for sex, "race/ethnicity," and sex-plus-race discrimination under only a disparate treatment theory. Am. Compl. ¶¶ 4.1-4.3.

#### a. Sex and Sex-Plus-Race Discrimination

Plaintiff brings a claim for sex discrimination and/or sex-plus-race discrimination. *See, e.g.*, Am. Compl. ¶ 4.2 ("[Principal Huff] was antagonistic toward Plaintiff as a member of a protected class, that is, being both Hispanic and female."). However, Plaintiff's Brief only mentions race discrimination. *See* Pl.'s Br. 14-15 (discussing "[t]he racial component of this harassment"). Plaintiff has abandoned any claim for discrimination based on sex or sex-plus-race. *See Arias v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00418-L, 2019 WL 2770160, at *2 (N.D. Tex. July 2, 2019) ("When a plaintiff fails to defend a claim in response to a . . . summary judgment motion, the claim is deemed abandoned." (citing, among other sources, *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)). And even if she had not abandoned such claim, it

fails because Plaintiff has not pointed to any evidence supporting it. Among other deficiencies, Plaintiff has not submitted evidence showing that a male replaced her or was treated more favorably than her. *See Wittmer v. Phillips 66 Co.*, 915 F.3d 328, 332 (5th Cir. 2019) (setting forth the elements of a discrimination claim, which include that a similarly situated employee outside of the plaintiff's protected class was treated more favorably).

### b. Race/Ethnicity Discrimination

In response to Defendant's request for summary judgment on Plaintiff's race discrimination claim, Plaintiff argues that she has established a claim for "race-based harassment/hostile work environment." Pl.'s Br. 14 (capitalization altered). Further, within Plaintiff's brief discussion of that claim, she references "harassment" and "retaliat[ion]" rather than disparate treatment. *See id.* at 14-15.

Plaintiff previously withdrew her hostile work environment claim and did not assert such a claim in the Amended Complaint. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss Pl.'s First Am. Compl. and Br. in Supp. [ECF No. 18] 3-4 (withdrawing hostile work environment claim); Am. Compl. ¶¶ 4.1-4.3 (asserting only a disparate treatment claim). And retaliation is a separate claim that the Court discusses below. Thus, Plaintiff did not defend her race-based disparate treatment claim and arguably abandoned it. *See Arias*, 2019 WL 2770160, at *2 (citing, among other sources, *Black*, 461 F.3d at 588 n.1).

Even if Plaintiff did not abandon this claim, however, it fails. Where, as here, a plaintiff provides no direct evidence of discrimination, the plaintiff must "rely on circumstantial evidence using the *McDonnell Douglas* burden-shifting analysis." *Wittmer*, 915 F.3d at 332. Under this framework, the plaintiff must first establish a prima facie case by showing that: (1) she is a member of a protected class; (2) she was qualified for the position that she held; (3) she suffered an adverse

15

employment action; and (4) she was replaced by someone outside of her protected class or was treated less favorably than similarly situated employees outside her protected class. *Woods v. STS Servs., L.L.C.*, 164 F.4th 394, 397 (5th Cir. 2026); *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (citation omitted). Once the plaintiff establishes a prima facie case, the burden "then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Alkhawaldeh*, 851 F.3d at 426 (citation omitted). If the employer does so, "the burden shifts back to the employee to demonstrate that the employer's proffered reason is a pretext for discrimination." *Id.* (cleaned up).

The parties do not dispute whether Plaintiff was a member of a protected class or qualified for her position, so the Court begins by analyzing whether Plaintiff suffered an adverse employment action. It is unclear which employment actions Plaintiff challenges. In Plaintiff's Brief, she refers to the Amplify coaching, the Summary of Conference and Letter of Concern, the 2024 Summative Review score, and the reassignment to Jordan. Pl.'s Br. 2, 14. In the Amended Complaint, Plaintiff also cites being moved from kindergarten to second grade. Am. Compl. ¶ 4.2.

In the context of a discrimination claim, a plaintiff must show that she was discriminated against with respect to "hiring, firing, compensation, or the terms, conditions, or privileges of employment." *Hamilton v. Dallas County*, 79 F.4th 494, 506 (5th Cir. 2023) (cleaned up). This standard requires both "adversity" and a "non-*de minimis* injury." *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 430 (5th Cir. 2023) (citation omitted). However, the plaintiff need not show significant, serious, or substantial harm. *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024) (citation omitted).

Plaintiff points to no evidence of a non-*de minimis* injury resulting from the Amplify coaching, arguing only that it undermined her credibility with her students and "wasted Plaintiff's

16

time." Pl.'s Br. 8, 14. By contrast, Defendant has produced evidence that many teachers received Amplify coaching, the coaching was not evaluative or the equivalent of a performance improvement plan, and the coaching was "strictly supportive." Def.'s App., Ex. B, at 583-84 ¶¶ 11-18; *id.* at 585 ¶¶ 21-22. Training that helps an employee does not injure the employee. *Moye v. Tregre*, No. 22-30341, 2024 WL 65424, at *3 (5th Cir. Jan. 5, 2024) (citation omitted). As such, the Amplify coaching Plaintiff received was not an adverse employment action.

As to the Summary of Conference and Letter of Concern, Plaintiff has provided no argument or evidence on how these rescinded counseling measures "brought about some 'disadvantageous' change in an employment term or condition." *Muldrow*, 601 U.S. at 354 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). Instead, the evidence provided by Defendant shows that neither document was placed in Plaintiff's personnel file with Defendant, Def.'s App., Ex. A, at 4-5 ¶¶ 14, 17, and that both were rescinded after Plaintiff filed grievances, Pl.'s App., Ex. A, at 6 ¶ 19; Def.'s App., Ex. A, at 5-6 ¶¶ 15, 18.

With respect to the Summative Review score, Plaintiff "points to nothing to show what, if any, effect the review had on the terms, conditions, or privileges of her employment." *Bravo v. Kendall*, No. 5:22-CV-1186-JKP, 2025 WL 965927, at *32 (W.D. Tex. Mar. 31, 2025); *see also, e.g., Dixon v. Garland*, No. 4:23-CV-00019-P, 2024 WL 150509, at *5 (N.D. Tex. Jan. 12, 2024) (rejecting argument that "excellent" performance reviews—as opposed to "outstanding"—amounted to adverse employment actions).

Other than noting that it happened, Plaintiff does not argue that the reassignment from kindergarten to second grade brought about a disadvantageous change in her employment terms or conditions. *See Muldrow*, 601 U.S. at 350 (citation omitted). In the Amended Complaint, Plaintiff contends that the move "gave her principal discretion to take away her stipend for

bilingual teaching" and "put her in a position where she did not have nine years of seniority . . . and where there was more likelihood that her teaching position would not be needed." Am. Compl. ¶ 3.33. Plaintiff provides no evidence in support of these purported harms. In fact, the summary judgment evidence shows that Plaintiff did not lose her stipend, Def.'s App., Ex. A, at 16 ¶ 45; Def.'s App., Ex. G-4, at 1158-59, and that seniority is based on time spent as a teacher, not time spent in a specific grade, *see* Def.'s App., Ex. F [ECF No. 41-13] 1083 ¶ 26; Def.'s App., Ex. F-9 [ECF No. 41-14] 1117 (reflecting that Plaintiff had 8.1 "Years in Job Type" as of September 2024). Because Plaintiff has not produced any evidence to create a factual dispute as to whether she suffered more than *de minimis* harm from the grade level reassignment, she cannot rely on it as an adverse employment action.

Plaintiff does, however, point to some harm resulting from her reassignment to Jordan. Plaintiff submitted evidence showing that her commute to Jordan is longer than her commute to Mockingbird and that she has been separated from her children, who have remained students at Mockingbird. Pl.'s App., Ex. A, at 14 ¶¶ 51-52. The Court will assume without deciding that these harms amount to a non-*de minimis* injury.

Considering only the reassignment to Jordan as an adverse employment action, the Court determines that Plaintiff's race discrimination claim fails because Plaintiff does not identify similarly situated employees outside of her protected class who were treated more favorably under "nearly identical" circumstances and thus cannot establish the fourth element of her prima facie case.[5] *Anthony v. Donahoe*, 460 F. App'x 399, 403 (5th Cir. 2012); *see also Bravo v. Dall. Indep.*

---

[5] Plaintiff was not replaced because Mockingbird's bilingual teaching allocation was reduced. *See, e.g.,* Def.'s App., Ex. C, at 713 ¶ 55. And to the extent any employee could be considered Plaintiff's replacement, a member of the same protected class—a Hispanic female—took over her classroom at Mockingbird. *See* Def.'s App., Ex. G [ECF No. 41-14] 1151 ¶ 47 (stating that "Ms. Mayorga" was the new teacher in Plaintiff's classroom); Def.'s App., Ex. A-30, at 573 (showing that Mayorga is Hispanic).

*Sch. Dist.*, No. 25-10982, 2026 WL 1531713, at *1 (5th Cir. June 1, 2026) (citation omitted). Plaintiff states in conclusory fashion that "[s]imilarly situated employees outside of Plaintiff's protected class were not reassigned." Pl.'s Br. 3 (citing Pl.'s App., Ex. A, at 15 ¶¶ 55-56). In the cited portion of her Declaration, Plaintiff points to only one employee outside of her protected class, Littlefield. *See* Pl.'s App., Ex. A, at 15 ¶ 55. According to Plaintiff, Littlefield—"a White Kindergarten teacher who was on Plaintiff's team"—led two "heated" meetings with Principal Huff, but Principal Huff "did not retaliate against Littlefield." Pl.'s Br. 15; *see also* Pl.'s App., Ex. A, at 15 ¶ 56 ("Littlefield did not receive or have to suffer through any of the near-constant and ongoing discrimination . . . that I did . . . ."). Plaintiff presents almost no evidence regarding Littlefield's qualifications, experience, work and disciplinary history, or other information sufficient to show that she was similarly situated to Plaintiff. *See Noble v. Lear Siegler Servs., Inc.*, 554 F. App'x 275, 276 (5th Cir. 2014). In fact, at the time of Plaintiff's reassignment to Jordan, neither Plaintiff nor Littlefield was teaching kindergarten. Plaintiff was teaching second grade, while Littlefield was teaching fifth grade. *See* Def.'s App., Ex. E, at 981-82 ¶ 41 (stating that Littlefield was moved to fifth grade during the summer of 2024). Further, the Court concludes that leading two "heated" meetings does not represent a history of "violations" or "infringements" similar to Plaintiff's. *Alkhawaldeh*, 851 F.3d at 426.

Because Plaintiff has not established a prima facie case of race discrimination, the Court need not complete the burden-shifting analysis.[6] Defendant is entitled to summary judgment on Plaintiff's discrimination claim for three reasons: (1) Plaintiff did not exhaust administrative remedies with respect to the only adverse employment action; (2) Plaintiff abandoned the claim;

---

[6] If the Court did conduct the remainder of the analysis, though, Plaintiff's claim would fail because she does not establish that Defendant's legitimate, nondiscriminatory reason for reassigning her was pretextual. *See infra* § III(B)(ii)(b)-(c).

and (3) Plaintiff does not create a genuine dispute of material fact with respect to her prima facie case.

### ii. Title VII Retaliation

Title VII also prohibits retaliation. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, Plaintiff must adequately allege that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021) (citation omitted). The burden then shifts to Defendant to "articulate a legitimate non-retaliatory reason for the adverse employment action." *Rodriguez v. City of Corpus Christi*, 129 F.4th 890, 899-900 (5th Cir. 2025) (citation omitted). If Defendant carries its burden, Plaintiff must demonstrate that the stated reason is "a pretext for retaliation." *Id.* at 900 (citation omitted).

### a. Prima Facie Case

As to the first element of the prima facie case, protected activities consist of opposing any practice deemed an unlawful employment practice by Title VII or making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VII. *Ellis v. Compass Grp. USA, Inc.*, 426 F. App'x 292, 296 (5th Cir. 2011) (citation omitted). The parties do not dispute that Plaintiff engaged in a protected activity when she filed the Charge on June 24, 2024.[7] *See* Def.'s Br. 37 n.12; Pl.'s Br. 16.

The second element requires an adverse employment action. For purposes of a retaliation claim, an adverse action is one a reasonable employee would have found "materially adverse," which means that it "might have dissuaded a reasonable worker from making or supporting"

---

[7] Although Plaintiff states that she engaged in other protected activities, and Defendant challenges whether they constitute protected activities, Plaintiff's legal argument relies only on the Charge. *See* Pl.'s Br. 17 (arguing that there is a causal connection between Plaintiff filing the Charge and her reassignment to Jordan). As such, the Court only considers the Charge here.

protected activity. *Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 460 (5th Cir. 2024) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). The standard for an adverse employment action is higher in the retaliation context than in the discrimination context, requiring "significant" harm. *Muldrow*, 601 U.S. at 357 (citation omitted); *see also Harris v. Amazon.com Inc.*, No. 3:22-CV-2279-K-BN, 2024 WL 4958265, at *5 (N.D. Tex. Nov. 14, 2024) (noting the "higher bar" for retaliation claims (citation omitted)), *report and recommendation adopted by* 2024 WL 4960009 (N.D. Tex. Dec. 3, 2024).

Plaintiff states that she suffered an adverse employment action "when she was involuntarily transferred to" Jordan.[8] Pl.'s Br. 16. According to Plaintiff, the transfer was materially adverse because it increased her commute, resulted in Plaintiff losing "many hours of valuable time with her children each week," "create[d] additional stress for [her] family," separated Plaintiff "from her special-needs son all day," "placed new financial burdens on [her] family," and "add[ed] a new layer of stress to [Plaintiff's] work." *Id.* at 16-17.

An employment action is materially adverse when it impacts aspects of an employee's job such as "job title, grade, hours, salary, or benefits" or "cause[s] a diminution in prestige or change in standing among co-workers." *Lemonia v. Westlake Mgmt. Servs., Inc.*, No. 22-30630, 2023 WL 6878915, at *6 (5th Cir. Oct. 18, 2023) (cleaned up). The Court need not decide whether Plaintiff's reassignment meets this standard because even if the Court assumes that it does,[9] Defendant has

---

[8] Plaintiff does not mention any of the other actions laid out in her Amended Complaint or elsewhere in her Brief. And regardless, for the reasons set forth above, the Court concludes that none constitute adverse employment actions.

[9] It is unlikely that Plaintiff's reassignment meets this standard. *See, e.g., Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 793, 804 (5th Cir. 2018) (holding that a commute that was seven miles longer did not render a reassignment materially adverse (citation omitted)); *Johnson v. TCB Constr. Co.*, 334 F. App'x 666, 671 (5th Cir. 2009) (determining that a 30- to 35-minute commute to a new job site was not unreasonable (citation omitted)); *Brooks v. Hous. Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 589 (S.D. Tex.

21

proffered a legitimate, non-retaliatory reason for Plaintiff's reassignment, and Plaintiff has not provided evidence that the reason is pretextual. *See infra* § III(B)(ii)(b)-(c); *Johnson*, 90 F.4th at 461.

The third element is a causal connection between the protected activity and the adverse employment action. The Fifth Circuit has noted that a time lapse of up to four months will satisfy this requirement. *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (citation omitted). Plaintiff was reassigned less than three months after she filed the Charge; therefore, she has adequately established a causal connection.

### b. Legitimate, Non-Retaliatory Reason

Because the Court assumes that Plaintiff established a prima facie case of retaliation, the burden shifts to Defendant to establish a legitimate, non-retaliatory reason for the reassignment. Defendant has carried its burden. Defendant determined that teachers must be reassigned after Mockingbird lost two English as a Second Language teaching allocations and one bilingual teaching allocation in Fall 2024. Def.'s App., Ex. C, at 713 ¶ 55. Pursuant to Defendant's policy, employees were chosen for leveling based on certifications, seniority, and professional background. Def.'s App., Ex. A, at 10 ¶ 31; Def.'s App., Ex. F-1 [ECF No. 41-13] 1088-89. But employees were exempt from leveling if they held a leadership position on campus. Def.'s App., Ex. A, at 10 ¶ 31; Def.'s App., Ex. F-1, at 1088-89. Principal Smyth, applying the policy, identified Plaintiff as the bilingual employee subject to reassignment because she was the only bilingual employee without a leadership role. Def.'s App., Ex. G, at 1146-47 ¶ 33; Def.'s App., Ex. A, at 11 ¶ 33. Defendant's application of its leveling policy is a legitimate, non-retaliatory reason for Plaintiff's reassignment.

---

2015) (characterizing a teacher's desire to work at the school her grandson attended as a "subjective preference for a position" that could not render a transfer adverse).

22

### c. Pretext

Because Defendant carried its burden, Plaintiff must show that the proffered reason is a pretext for retaliation, meaning that the reassignment "would not have occurred but for the employer's retaliatory motive." *Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 653 (5th Cir. 2025) (cleaned up). The Court considers various factors, including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Id.* (citation omitted).

Plaintiff contends that Defendant's use of its leveling policy was "a pretext for . . . retaliation." Pl.'s Br. 1. At the prima facie stage, Plaintiff put forth evidence of temporal proximity, but to demonstrate pretext, "[t]emporal proximity alone is not enough." *Shahrashoob*, 125 F.4th at 653 (citation omitted). Beyond temporal proximity, Plaintiff offers nothing more than her subjective belief that Defendant's explanation for her reassignment is false. *See Alvarez-Diemer v. Univ. of Tex.-El Paso*, 258 F. App'x 689, 691 (5th Cir. 2007) (noting that a plaintiff's "subjective belief that she was discriminated against" is "insufficient to withstand summary judgment"). Plaintiff's evidence largely focuses on Principal Huff, who resigned before Fall Leveling took place. *See* Def.'s App., Ex. C, at 710 ¶ 46. Principal Smyth, not Principal Huff, identified Plaintiff for reassignment. Def.'s App., Ex. C, at 713 ¶ 55. Trying to get around this fact, Plaintiff states in her Declaration that "[i]t appears that [Principal] Huff had gamed the leadership position criteria of the leveling process" by failing to assign and confirm leadership positions in Spring 2024. Pl.'s App., Ex. A, at 13 ¶ 49. Even accepting Plaintiff's speculation as true, the summary judgment evidence shows that the positions Plaintiff might have been confirmed for would not constitute leadership positions under Defendant's leveling policy. Def.'s App., Ex. G, at 1144-45 ¶¶ 27-29;

Def.'s App., Ex. G-11 [ECF No. 41-14] 1171 (reflecting that Plaintiff was "move[d] . . . to the Garden Committee" in August 2024). Where unsupported speculation is "wholly contradicted by the record evidence," summary judgment is appropriate. *Sotonwa v. Collins*, No. 24-11043, 2025 WL 2222730, at *6 (5th Cir. Aug. 5, 2025).

Although it is not clear, Plaintiff may also rely on the fact that Defendant offered to move her back to Mockingbird in exchange for her dropping her claims as evidence of pretext. *See* Pl.'s Br. 18. But Plaintiff does not explain how an apparent settlement offer made shortly before this lawsuit was filed proves that Principal Smyth's earlier leveling decision was a pretext for retaliation. *See* Pl.'s App., Ex. I, at 110 (October 4, 2024, email noting that counsel for Defendant would "draft the settlement agreement" if Plaintiff accepted Defendant's offer).

As a final note, Plaintiff was not the only employee reassigned in 2024 as a result of Fall Leveling. Two other teachers—one white and one Hispanic—were leveled at the same time. *See* Def.'s App., Ex. F-12 [ECF No. 41-14] 1127-31 (showing that Kyleigh Campbell and Sophia Rangel were assigned to different campuses at the same time as Plaintiff); Def.'s App., Ex. A-30, at 564 (showing that Campell is white and not Hispanic). This fact further weakens Plaintiff's speculation that Principal Huff somehow manipulated the leveling process in advance to target her.

\* \* \*

In sum, Defendant is entitled to summary judgment on Plaintiff's retaliation claim both because she failed to exhaust administrative remedies and because she has not set forth evidence creating a genuine dispute of material fact as to pretext.

24

### iii. First Amendment Retaliation

In the Amended Complaint, Plaintiff brings a claim for First Amendment retaliation. Am. Compl. ¶¶ 4.7-4.14. To state such a claim, a public employee like Plaintiff must plead that: (1) she suffered an adverse employment action; (2) she spoke as a citizen on a matter of public concern; (3) her interest in the speech outweighs Defendant's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action. *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (citation omitted). The First Amendment does not protect "expressions made pursuant to [the speaker's] official duties." *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007) (citation omitted).

Plaintiff's First Amendment claim is brought under 42 U.S.C. § 1983, which "provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks omitted). To state a claim under Section 1983, a plaintiff must allege facts showing (1) a deprivation of a right secured by the Constitution and laws of the United States and (2) that the deprivation occurred under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (citation omitted).

A municipal entity like Defendant cannot be held vicariously liable under Section 1983 for the individual acts of its employees. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (citation omitted); *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (citation omitted). "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (alteration in original) (citation omitted). To satisfy

25

this standard, Plaintiff must show "a policymaker; an official policy [or custom]; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

Defendant moves for summary judgment on Plaintiff's First Amendment claim on multiple grounds, including that Plaintiff cannot establish the elements of a First Amendment retaliation claim and failed to prove that Defendant can be held liable as a municipality. Mot. 5-6. In her Response and Brief, Plaintiff does not address Defendant's arguments or point to any summary judgment evidence supporting her First Amendment claim. Plaintiff has abandoned this claim by failing to defend it against Defendant's Motion. *See Arias*, 2019 WL 2770160, at *2 (citing, among other sources, *Black*, 461 F.3d at 588 n.1).

Even if Plaintiff had not abandoned her First Amendment claim, Defendant is entitled to summary judgment. Plaintiff has pointed to no evidence creating a genuine dispute as to any material fact with respect to her First Amendment retaliation claim, and she has not set forth a basis for municipal liability under Section 1983. *See, e.g.*, Am. Compl. ¶ 4.13 (referring in conclusory fashion to "Defendant's policies"). As such, the Court will dismiss this claim.

### C. Damages

Because the Court concludes that Defendant is entitled to summary judgment on all of Plaintiff's claims, the Court declines to reach Defendant's argument that Plaintiff has no evidence of damages. *See* Def.'s Br. 50.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Dallas Independent School District's Motion for Summary Judgment [ECF No. 39]. To the extent Plaintiff's claims are

26

dismissed for failure to exhaust administrative remedies, they are **DISMISSED WITHOUT PREJUDICE**. In all other respects, this case is **DISMISSED WITH PREJUDICE**.

      **SO ORDERED.**

      SIGNED June 4, 2026.

 

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**

27